# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MAN FERROSTAAL INCORPORATED, )
)
        Plaintiff, )
)
vs. ) **2:05cv546**
) **Electronic Filing**
)
WINNER STEEL SERVICES, INC. )
)
        Defendant. )

## MEMORANDUM ORDER

AND NOW, this 19th day of November, 2007, upon due consideration of plaintiff's motion for partial summary judgment and the parties' submissions in conjunction therewith, IT IS ORDERED that the motion (Doc. No. 53) be, and the same hereby is, granted in part and denied in part. The motion is granted to the extent it seeks to amend the judgment order of October 14, 2005, to include interest on the principal amount due from March 1, 2003, through October 14, 2005, at a rate of 6% simple interest per annum pursuant to 41 P.S. § 202, in the total amount of $101,266.45. The motion is denied in all other aspects.

Defendant's offer as memorialized in its purchase orders expressly limited acceptance by plaintiff exclusively to the terms on or attached to the purchase order. In addition, defendant sought to preempt any effort by plaintiff to create a contract with additional or different terms by objecting to and rejecting any such terms in the acceptance in advance of it being made/received. In contrast, plaintiff sought through its order confirmation to make its acceptance "conditional on [defendant's] assent to the terms and conditions set forth" on its order confirmation and further indicated "the products" referenced in the purchase confirmation would be furnished "upon these terms and conditions, and no others." Plaintiff took no affirmative action to convey to defendant that the deal was conditional on defendant's expressed assent to any additional or different terms in its order confirmation and defendant did not sign the order confirmation or otherwise

acknowledge its assent to any such terms.

Plaintiff's order confirmation sufficiently indicated that its acceptance of defendant's offer was conditional on defendant's assent to any additional or different terms on its order confirmation form. See Diamond Fruit Growers, Inc. v. Krack Corp.,794 F.2d 1440, 1444 (9th Cir. 1986) (a communication from the offeree that tracks the conditional language of Section 2207(a) precludes the formation of a contract thereunder and converts the acceptance into a counter-offer); Flender Corp. v. Tippins Intern., Inc., 830 A.2d 1279 (Pa. Super. 2003) ("The formation of a written contract is defeated [under 2207(a)] only where the offeree responds with different or additional terms and 'explicitly communicate[s] his or her unwillingness to proceed with the transaction' unless the offeror accepts those terms.); accord Dorton v. Collins & Aikman Corp., 453 F.2d 1161 (6th Cir.1972) (same). But the formulation of its acceptance in such a manner does not in itself jettison plaintiff back into the "winner's position" it would occupy under the common law mirror image rule. Instead, to become operative and controlling plaintiff must both use such language in its confirmation and then "explicitly communicate[s] his or her unwillingness to proceed with the transaction unless the offeror accepts those terms." Step-Saver Data Systems, Inc. v. Wyse Technology, 939 F.2d 91, 101-2 (3d Cir. 1991) (citations omitted). In other words, to have its terms control plaintiff must come forward and present a real basis to support a finding that defendant was made to understand that plaintiff was unwilling to proceed with the transaction unless defendant agreed to plaintiff's additional and/or different terms. Id.; Diamond Fruit Growers, 794 F.2d at 1445 ("That result is avoided by requiring a specific and unequivocal expression of assent on the part of the offeror when the offeree conditions its acceptance on assent to additional or different terms."). Merely sitting back and permitting the transaction to go forward is insufficient. See Step-Saver Data Systems, 939 F.2d at (to be effective, the offeree must prove it demonstrated a genuine "unwillingness to proceed with the transaction unless the additional or different terms are included in the contract.").

"If the offeror does not give specific and unequivocal assent but the parties act as if they

have a contract, the provisions of section 2-207(3) apply to fill in the terms of the contract. Application of section 2-207(3) is appropriate in that situation because by going ahead with the transaction without resolving their dispute, both parties are responsible for introducing ambiguity into the contract." Diamond Fruit Growers, 794 F.2d at 1445 ; accord Step-Saver Data Systems, 939 F.2d at 101 n. 34 ("If the sole evidence of assent to the terms of the counteroffer is from the conduct of the parties in proceeding with the transaction, then the courts generally define the terms of the parties's agreement under § 2-207(3)."); Altronics of Bethlehem v. Repco, Inc., 957 F.2d 1102, 1107 n. 1(3d Cir. 1992) (same).

When the parties' agreement has been formed by the conduct of performance, the terms of their agreement are those "on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this Act." Pa. C. S. § 2-207(c); Step-Saver Data Systems, 939 F.2d at 101. The parties' writings do not reflect agreement on the interest rate to be applied to unpaid balances following the term of open credit. Thus, plaintiff is not entitled to enforce the interest formula contained in its order confirmation.

Defendant concedes, however, that the "gap filling" approach of Article II mandates that interest be paid on such balances, as accruing interest is customary and a well-accepted practice among merchants under such circumstances. See Defendant's Memorandum of Law (Doc. No. 59) at 2 ("Winner Steel admits owing some amount of interest on this judgment amount."); Herzog Oil Field Service, Inc. v. Otto Torpedo Co., 570 A.2d 549, 551 (Pa. Super.1990) ("[C]omment 5 to § 2207 states, as an example of a term that does not materially alter the contract, 'a clause providing for interest on overdue invoices ... where they are within the range of trade practice....' Furthermore, it is common in commercial circles, including transactions with non-merchants, for balances to be subjected to interest charges."). Pennsylvania law supplies a 6 percent simple interest rate when the parties have not committed themselves to a particular rate of interest. 41 P.S. § 202. Application of this rate results in the accrual of interest

in the total amount of $101,266.45 for the period between March 1, 2003 and October 14, 2005.[1]

Accordingly, the judgment order of October 14, 2005, properly is amended as indicated above.


                                                              s/ David Stewart Cercone
                                                               David Stewart Cercone
                                                               United States District Judge


cc:     Bruce C. Fox
          Obermayer Rebmann Maxwell & Hippel LLP
          One Mellon Center
          500 Grant Street
          Suite 5240
          Pittsburgh, PA 15219

          Jonathan M. Peterson
          Lisanne L. Mikula
          Mark S. Halpern
          Halpern & Levy
          GSB Building
          One Belmont Avenue
          Suite 400
          Bala Cynwyd, PA 19004

          Richard F. Moroco
          Pietragallo, Bosick & Gordon, LLP
          54 Buhl Boulevard
          Sharon, PA 16146

---

[1] Even assuming plaintiff's purchase orders were to be treated as a seasonable expression of acceptance, the same result would be reached through operation of 2-207(b). In that event the incorporation of any additional terms in plaintiff's order confirmation would be governed by 2-207(b). But defendant expressly limited acceptance to the terms of its offer, which did not include plaintiff's interest rate formula, and plaintiff had "already been given" notification of defendant's rejection of that formula through the provision in defendant's purchase order. The additional term thus would not have become part of the contract as a result of the operation of 2-207(b)(1) & (3). See White & Summers, UNIFORM COMMERCIAL CODE, 5th ed. (2000) at § 1-3, p. 4. The resulting contract would then be governed by the expressed terms on which the parties agree and any additional terms supplied by the gap filling measures of the UCC or by operation of law. See Step-Saver Data Systems, 939 F.2d at 100 ("Thus, even though warranties are an important term left blank by the parties, the default rules of the UCC fill in that blank").

Albert N. Peterlin
Pietragallo, Bosick & Gordon
One Oxford Centre
38th Floor
Pittsburgh, PA 15219